**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT AKRON**

| | | |
|---|---|---|
| **COLLIN DAFT**, on behalf of himself and others similarly situated, | : | **CASE NO. 5:26-cv-999** |
| Plaintiff, | : | **JUDGE BENITA Y. PEARSON** |
| v. | : | **MAGISTRATE JUDGE CARMEN E. HENDERSON** |
| **NOVELIS CORPORATION** | : | **<u>JURY DEMAND ENDORSED HEREON</u>** |
| Defendant. | : | |

**<u>PLAINTIFF'S FIRST AMENDED COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT</u>**

Named Plaintiff Collin Daft, individually and on behalf of others similarly situated, files his First Amended Collective Action Complaint[1] against Defendant Novelis Corporation for its failure to pay its employees overtime wages, seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Named Plaintiff's FLSA claim is brought as a collective action pursuant to 29 U.S.C. § 216(b). The following allegations are based on personal knowledge as to Named Plaintiff's own conduct and are made on information and belief as to the acts of others. Named Plaintiff, individually and on behalf of others similarly situated, hereby states as follows:

## I. JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for violations of the FLSA.

2. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant

[1] Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Named Plaintiff is filing this First Amended Collective Complaint as a matter of course before Defendant has filed any responsive pleading.

conducts significant business in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## II. PARTIES

### A. Named Plaintiff

3. Named Plaintiff is an individual, a United States citizen, and a resident of Ohio.

4. Named Plaintiff worked for Defendant at its facility in Uhrichsville, Ohio, as an hourly, non-exempt employee as defined in the FLSA in the role of Furnace Operator from July 2024 to April 2026.

5. At all relevant times, Named Plaintiff primarily performed non-exempt duties for Defendant in furtherance of its business of producing and distributing aluminum and aluminum products.

6. During his employment, Named Plaintiff worked 40 or more hours in one or more workweek(s).

7. Named Plaintiff brings this action on behalf of himself and other similarly situated employees and has given his written consent to bring this action to collect unpaid overtime compensation under the FLSA. Named Plaintiff's consent form was previously filed with the original Complaint, *see* ECF No. 1-1.

8. In addition to Named Plaintiff, Dominque Edmonds has joined this action by filing a consent to join form ("Opt-In Plaintiff")[2], *see* ECF No. 23-1.

### B. Defendant

9. Defendant is a foreign corporation that is registered to conduct business in Ohio.

---

[2] Although not expressly included in all allegations by specific reference, Opt-In Plaintiff is a similarly situated employee and/or similarly situated production/manufacturing employee as alleged herein.

10. Defendant is a manufacturer and distributor of aluminum and aluminum products.[3]

11. Defendant currently owns, operates, and/or manages sixteen facilities across the United States, including three in Ohio.[4]

12. At all relevant times, Defendant has been an "employer" as the FLSA defines that term due to its employment of Named Plaintiff and those similarly situated as described herein.

13. At all relevant times, Defendant has had the authority to hire and fire employees, supervise and control employees' work schedules and conditions, determine the rate and method of employees' pay, and/or maintain employees' employment records.

14. At all relevant times, Defendant has determined the essential terms and conditions of employment for Named Plaintiff and similarly situated employees.

15. At all relevant times, Defendant has had control and authority over Named Plaintiff's and similarly situated employees' working conditions. At all relevant times, Defendant exercised that authority and control over Named Plaintiff and similarly situated employees.

16. At all relevant times, Defendant suffered or permitted Named Plaintiff and other similarly situated employees to work. The work performed by Named Plaintiff and similarly situated employees benefited Defendant and directly or indirectly furthered its interests.

17. Because the work performed by Named Plaintiff and all other similarly situated employees benefited Defendant and directly or indirectly furthered its interests, Defendant is the employer of Named Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

[3] *About Us*, NOVELIS, https://novelis.com/about-us/ (last visited August 10, 2026).
[4] *Locations*, NOVELIS, https://novelis.com/locations/ (last visited August 10, 2026).

18. Upon information and belief, Defendant applies or causes substantially the same employment policies, practices, and procedures to be applied to its employees at all of Defendant's Ohio locations, including policies, practices, and procedures relating to the payment of wages, overtime, and timekeeping.

19. At all relevant times, Defendant, as a corporate entity producing and distributing steel and metal products, was an enterprise engaged in "commerce or in the production of goods for commerce" because it had employees engaged in commerce or in the production of goods for commerce, or had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

20. At all relevant times, Defendant has had annual gross volumes of sales made, or business done, of not less than $500,000 each year.

21. Upon information and belief, at all relevant times, Defendant was fully aware that it was legally required to comply with the wage and overtime laws of the United States.

## III. FACTS

22. Named Plaintiff and other similarly situated production/manufacturing employees worked 40 or more hours in one or more workweek(s) during the three years immediately preceding the filing of this Complaint.

23. During their employment with Defendant, Named Plaintiff and other similarly situated production/manufacturing employees were involved in the production and distribution of aluminum and aluminum products. This type of work is considered high-hazard industrial work, with various attendant safety risks including, but not limited to, crush injuries, burn injuries, impact injuries, and laceration injuries. Due to these hazards, Defendant required Named Plaintiff and

other similarly situated production/manufacturing employees to comply with strict safety protocols at work as a condition of performing their job duties.

24. During their employment with Defendant, Named Plaintiff and other similarly situated production/manufacturing employees were required to arrive at their respective facilities before the scheduled start of their shifts to engage in mandatory pre-shift meetings.

25. During these mandatory pre-shift meetings, Named Plaintiff and other similarly situated hourly production/manufacturing employees would discuss, among other things, (1) the status of the production and any work-related or safety issues or problems that arose during the prior shift and/or that might arise during the current shift, and/or (2) directions and instructions about work to be performed during the current shift.

26. These mandatory pre-shift meetings were integral and indispensable to Named Plaintiff's and other similarly situated production/manufacturing employees' job duties and were primarily for Defendant's benefit. Given the environment in which they work(ed), the mandatory pre-shift meetings were required to ensure the efficient and safe transition of production/manufacturing duties from one shift to the next and were therefore inextricably intertwined with Named Plaintiff's and other similarly situated production/manufacturing employees' job duties. Named Plaintiff and other similarly situated production/manufacturing employees could not properly perform their work duties without participating in these mandatory pre-shift meetings.

27. At all relevant times, engaging in these pre-shift meetings was Named Plaintiff's and other similarly situated production/manufacturing employees' first principal activity of the day.

28. Defendant did not compensate Named Plaintiff and other similarly situated hourly production/manufacturing employees for the time they spent engaging in mandatory pre-shift meetings.

29. For example, Named Plaintiff was generally scheduled to work 12-hour shifts, from 7:00 A.M. to 7:00 P.M., four days a week. However, Named Plaintiff was only paid for his scheduled shift times, generally 48 hours a week, despite engaging in his mandatory pre-shift meeting before his scheduled shift started. *See* Representative Paystub, ECF No. 1-2.

30. Accordingly, Defendant failed to compensate Named Plaintiff and other similarly situated hourly production/manufacturing employees for all hours worked, which resulted in overtime in weeks in which they worked 40 or more hours.

31. Defendant's policies described herein resulted in unpaid overtime for Named Plaintiff and other similarly situated production/manufacturing employees.

32. During relevant times, Defendant knew of and acted willfully regarding its conduct described herein. Defendant knew that Named Plaintiff and others similarly situated worked overtime without compensation for all overtime hours worked.

33. The FLSA requires Defendant to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7.

34. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid

each pay period, and date of payment and pay period covered by the payment. See 29 C.F.R. § 516.2.

35. Defendant failed to track, keep, and/or transmit the hours accurately worked each day by Named Plaintiff and other similarly situated production/manufacturing employees.

36. Defendant willfully transmitted inaccurate and/or incomplete records to payroll for compensation purposes, which do not include all work performed. The incorrect and/or incomplete records had the direct effect of reducing Defendant's labor costs to the detriment of Named Plaintiff and other similarly situated production/manufacturing employees.

37. Thus, Defendant willfully did not record and pay all hours worked in violation of the FLSA and violated the FLSA's recordkeeping requirements.

38. Upon information and belief, Defendant applied these same policies to all its hourly, non-exempt production/manufacturing employees at all its Ohio locations.

39. As a result of Defendant's companywide policy and/or practice described herein, Defendant knew or had reason to know that it was not compensating Named Plaintiff and other similarly situated production/manufacturing employees for all overtime hours worked.

40. Defendant is in possession and control of the necessary documents and information from which Named Plaintiff would be able to calculate damages, and/or Defendant otherwise failed to keep such records.

## IV. FLSA COLLECTIVE ALLEGATIONS

41. Named Plaintiff brings his FLSA overtime claims pursuant to 29 U.S.C. § 216(b) as a representative action for himself and all other similarly situated production/manufacturing employees of the opt-in collective. The FLSA collective consists of the following:

> **All current and former hourly, non-exempt production/manufacturing employees at all of Defendant's**

> **Ohio locations who were paid for 40 or more hours of work in any workweek beginning April 28, 2023 and continuing through the final resolution of this action (hereinafter the "FLSA Collective" or "Potential FLSA Collective Members").[5]**

42. This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA, liquidated damages, and attorneys' fees.

43. In addition to Named Plaintiff, the Potential FLSA Collective Members have been denied proper overtime compensation due to the companywide time and pay policies and/or practices described herein. Defendant failed to meet the minimum requirements of the FLSA by not paying Named Plaintiff and the Potential FLSA Collective Members overtime wages for all overtime hours worked. Named Plaintiff is representative of those other similarly situated production/manufacturing employees and is acting on behalf of their interests as well as his own in bringing this action.

44. The identities of the Potential FLSA Collective Members are known to Defendant and are readily identifiable through Defendant's records. These individuals may readily be notified of this action and allowed to opt in to it pursuant to 29 U.S.C. § 216(b) for the collective adjudication of their claims for overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

45. The net effect of Defendant's policies and practices is that Defendant willfully failed to fully and properly pay Named Plaintiff and the Potential FLSA Collective Members overtime wages. Thus, Defendant enjoyed substantial ill-gained profits at the expense of Named Plaintiff and the Potential FLSA Collective Members.

---

[5] Named Plaintiff reserves the right to amend his definition of whom he seeks to send Court-authorized notice of this action to upon further investigation and discovery.

## V. CAUSE OF ACTION

### COUNT I: FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME

46. All of the preceding paragraphs are realleged as if fully rewritten herein.

47. This claim is brought as part of a collective action by Named Plaintiff on behalf of himself and the FLSA Collective.

48. The FLSA requires that employees receive overtime compensation at a rate of 1.5 times their regular rate of pay for hours worked over 40 per workweek. 29 U.S.C. § 207(a)(1).

49. During the three years preceding the filing of the Complaint, Defendant employed Named Plaintiff and the Potential FLSA Collective Members.

50. Named Plaintiff and the Potential FLSA Collective Members regularly worked more than 40 hours in workweeks.

51. Defendant violated the FLSA with respect to Named Plaintiff and the FLSA Collective by failing to compensate them for overtime wages for all hours worked over 40 hours in a workweek because of Defendant's policies and/or practices described herein.

52. Defendant also violated the FLSA by failing to maintain and preserve payroll or other records containing, among other things, the hours worked each workday, and the total hours worked each workweek. *See* 29 C.F.R. §§ 516.2, *et seq*.

53. Named Plaintiff and the Potential FLSA Collective Members were not exempt from receiving FLSA overtime compensation.

54. Defendant knew or should have known of the overtime payment requirements of the FLSA. Despite such knowledge, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the Potential FLSA Collective Members were entitled.

55. The exact total amount of compensation, including overtime compensation, that Defendant has failed to pay Named Plaintiff and the Potential FLSA Collective Members is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendant or were not kept by Defendant.

56. As a direct and proximate result of Defendant's conduct, Named Plaintiff and the Potential FLSA Collective Members have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest, attorneys' fees, and all other remedies available on behalf of himself and the Potential FLSA Collective Members.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendant and for an Order:

A. Directing Defendant to provide all relevant policies and procedures regarding timekeeping and compensation, as well as all payroll, remuneration, timekeeping, and related records of the Potential FLSA Collective Members;

B. Directing Defendant to provide all contact information, including but not limited to names, dates of employment, mailing addresses, telephone numbers, and email addresses of the Potential FLSA Collective Members;

C. Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the Potential FLSA Collective Members, apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA and pursuant to 29 U.S.C. § 216(b);

D. Tolling the statute of limitations for all members of the FLSA Collective from the date on which this matter was initially filed until the date on which they file consent to join forms;

E. Finding that Defendant failed to keep accurate records and that, as a result, Named Plaintiff and the FLSA Collective are entitled to prove their hours worked with reasonable estimates;

F. Awarding to Named Plaintiff and the Potential FLSA Collective Members who join this case unpaid overtime wages to be determined at trial, together with any liquidated damages allowed by the FLSA;

G. Awarding to Named Plaintiff and the Potential FLSA Collective Members who join this case costs, disbursements, and reasonable allowances for fees of counsel and experts, as well as reimbursement of expenses;

H. Awarding to Named Plaintiff and the Potential FLSA Collective Members who join this case such other and further relief as the Court deems just and proper;

I. Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

J. Rendering judgment against Defendant for all damages, relief, or any other recovery whatsoever.

**JURY DEMAND**

Named Plaintiff requests a trial by a jury.

Respectfully submitted,

**COFFMAN LEGAL, LLC**

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
Shannon M. Draher (0074304)
Adam C. Gedling (0085256)
Tristan T. Akers (0102298)
1550 Old Henderson Rd
Suite #126

Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com
sdraher@mcoffmanlegal.com
agedling@mcoffmanlegal.com
takers@mcoffmanlegal.com

*Attorneys for Named Plaintiff and those similarly situated*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August 2026, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman